IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DELROY PENGELLY, | ) | Civ. No. 17-00306 SOM-KJM |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING THE HAWAII |
| | ) | FAMILY COURT'S, EDWARD |
| vs. | ) | SMITH'S, AND ROBERT KIM'S |
| | ) | MOTIONS TO DISMISS AND |
| STATE OF HAWAII, FAMILY COURT | ) | DENYING MOTION FOR A TRIAL |
| OF THE THIRD CIRCUIT; | ) | DATE |
| MARGARITA PENGELLY AND OBO | ) | |
| MINOR CHILD; EDWARD J.S.F. | ) | |
| SMITH; ERNIE F. GIANOTTI; | ) | |
| ROBERT D.S. KIM, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING THE HAWAII FAMILY COURT'S, EDWARD SMITH'S, AND ROBERT KIM'S MOTIONS TO DISMISS AND DENYING MOTION FOR A TRIAL DATE**

I.        INTRODUCTION.

         Plaintiff Delroy Pengelly ("Delroy"),[1] proceeding pro se, has filed a Complaint alleging that two of his attorneys, his estranged wife, her attorney, and a Hawaii Family Court violated his Fifth and Fourteenth Amendment rights and various Hawaii statutes.  The allegations focus on conduct that occurred during Family Court proceedings between Delroy and his wife. Before this court are several Defendants' motions to dismiss, arguing that the court lacks subject matter jurisdiction or, alternatively, that the Complaint fails to state a claim upon which relief can be granted.  The court grants the motions filed

_____

[1] This Order refers to Delroy by his first name because his wife, Margarita Pengelly, is also a party.

by the Hawaii Family Court, Edward Smith, and Robert Kim. The court decides the motions without a hearing pursuant to Local Rule 7.2(d). A hearing on Defendant Ernie Gianotti's Motion remains scheduled for 9:00 a.m. on November 27, 2017. The court also denies as unnecessary Plaintiff's Motion for a Trial Date.

## II.      BACKGROUND.

Delroy names as Defendants his estranged wife, Margarita Pengelly ("Margarita"); her attorney, Robert Kim; two of Delroy's previous attorneys, Edward Smith and Ernie Gianotti; and the State of Hawaii Family Court of the Third Circuit ("Hawaii Family Court"). ECF 1, PageID # 1. No other party is labeled a "Defendant" in the caption or the body of the Complaint. *See id.*, PageID # 1-2. The Complaint does note that the Hawaii Family Court acted "at all times . . . through its agents: Judge Aley K. Auna Jr. and court employees." *Id.* The Complaint's allegations describe conduct by Judge Auna, but not conduct by any other court employees. Accordingly, the court construes the Complaint as naming Judge Auna--and only Judge Auna--as an additional Defendant.[2]

This Order addresses motions by two of the three attorneys, the Hawaii Family Court, and Judge Auna. *See* ECF 7, PageID # 25 (Robert Kim); ECF 11, PageID # 43 (Hawaii Family

---

[2] In its Motion to Dismiss, the Hawaii Family Court treats both Judge Auna and unidentified court employees as Defendants and makes arguments on their behalf. *See* ECF 11, PageID # 7-11.

Court and Judge Auna); ECF 20, PageID # 83 (Edward Smith). All of these Defendants' motions to dismiss were set for hearing on October 3, 2017, *see* ECF 25, while the third attorney, Gianotti, filed a motion to dismiss that remains scheduled for a hearing at 9:00 a.m. on November 27, 2017, *see* ECF 27; ECF 28. The present Order, consequently, does not resolve Gianotti's Motion. Margarita has filed an Answer but no motion to dismiss. *See* ECF 14, PageID # 61-62.

Delroy filed a "Motion for a Trial Date" on October 3, 2017. *See* ECF 30, PageID # 132.

### A.   Allegations in the Complaint.

Delroy is a United States citizen who resides in Kailua Kona, Hawaii. ECF 1, PageID # 2. On September 12, 2015, Delroy married Margarita Pengelly, a Russian citizen, who, according to Delroy, "schemed and plotted" to marry Delroy for the "sole purpose" of obtaining a green card. *Id.* The two have a young child. *Id.*

Margarita received her green card around May 29, 2016, and began planning a trip to Dubai for herself, Delroy, and their child. *Id.*, PageID # 4. Margarita bought tickets for flights on July 15, 2016. *Id.*, PageID # 4-5. Delroy started to worry that, once in Dubai, Margarita would divorce him and abscond with their child. *Id.* The day before the family was scheduled to leave, Delroy "removed and secured" the child's

passport, went to work, and phoned Margarita to express his
fears. *Id.*, PageID # 5. At 6 p.m., Margarita texted Delroy to
ask where the passport was. *Id.* It is unclear whether Delroy
responded. *See id.* At 11:50 p.m., Delroy returned home from
work and found the house empty. *Id.* Delroy contacted the local
police, the FBI, the State Department, and the National Center
for Missing and Exploited Children to report that his wife and
child were missing. *Id.*

       The next day, unable to board the flight to Dubai,
Margarita and the child went to the Hawaii Family Court to
request a temporary restraining order ("TRO") against Delroy.
*Id.* On the application, Margarita accused Delroy of being
"emotionally and psychologically violent" and "threaten[ing] to
kill her." *Id.* Delroy calls these "false statements." *Id.* At
some point, Margarita allegedly "lied [to] and deceived the
Child and Family Services for Domestic Abuse Shelter" by
claiming that Delroy had abused her, and telephoned Delroy's
sister in an alleged attempt to elicit false statements to the
effect that Delroy "was an abusive person and ex-husband." *Id.*,
PageID # 5-6.

       At the TRO hearing, Margarita allegedly "provided four
false witnesses to testify" against Delroy. *Id.*, PageID # 3.
It is not clear who the witnesses were. *See id.* Delroy
complains that his attorney, Ernie Gianotti, failed to "show a

                                   4

willingness to work on [Delroy's] behalf" and "refus[ed] to
effectively cross examine" the witnesses. *Id.* Judge Aley K.
Auna Jr. granted the TRO. *See id.*

Delroy filed for divorce on July 29, 2016, and for
annulment on November 1, 2016. *Id.*, PageID # 3. Margarita,
through her attorney, Robert Kim, filed for divorce on August
10, 2016. *Id.*

Delroy describes Judge Auna as having demonstrated
"bias" towards Delroy during the various proceedings. *Id.*,
PageID # 6. Judge Auna allegedly "ignored evidence prejudicial
to the favored party," made "one[-]sided comments," and "granted
approximately 99% of the motions in favor of Margarita." *Id.*
Margarita had, for example, allegedly violated the TRO "on four
separate occasions," including by approaching "within one
f[oo]t" of Delroy's car and by being "present when [Delroy]
picked up and dropped off" their child at a playground. *Id.*
When Judge Auna was informed of Margarita's four violations, he
allegedly dismissed them as "nothing of great importance." *Id.*
Then, on August 22, 2016, Judge Auna allegedly "enforced" the
TRO and "charged Delroy with domestic violence," "even [though]
there was no evidence of abuse and while ignor[ing] [Delroy's]
evidence." *Id.*, PageID # 3. According to Delroy, Judge Auna
also "stated in court that he w[ould] prevent Delroy . . . from
having any contact" with the child until Delroy attended a

domestic violence program, "[t]hereby misusing the legal system." *Id.*

Edward Smith represented Delroy in some of these proceedings but, like the attorney before him, allegedly failed to "show a willingness to work" on Delroy's behalf. *Id.*, PageID # 4. Delroy claims that Smith said at the time he was hired that he would file an appeal and take other actions in the case, but, as of June 12, 2017, had not done so. *Id.*, PageID # 4. On June 12, 2017, Delroy sent an email that "terminated [his and Smith's] legal relationship," but on June 16, 2017, Judge Auna "denied Attorney Smith's Motion to Withdraw as Coun[sel]" and Smith "continue[d] working on [the] case." *Id.*

Robert Kim, representing Margarita, was allegedly "the 'kingpin' of [a] collusive effort to deplete Delroy['s] . . . income and assets." *Id.*, PageID # 6. Delroy says that Kim filed documents with the Family Court to have Delroy's income garnished, and, soon thereafter, Delroy faced "orders for payments to various entities." *Id.*, PageID # 3, 6.

**B. Theories of Liability.**

The Complaint asserts four claims for relief against "the Defendants," ECF 1, PageID # 7-11, by which Delroy apparently means *all* Defendants.[3] First, Defendants violated

---

[3] The court rejects Defendant Smith's argument that because the Complaint speaks generally of "the defendants," it should be

Delroy's Fifth and Fourteenth Amendment rights by depriving him of income and his emotional bond with **his child** without due process of law. *Id.*, PageID # 8. Second, Defendants were part of a civil conspiracy to deprive Delroy of his assets. *Id.*, PageID # 9. Third, Defendants "engage[d] in overt acts [of] fraud" while using the legal system to further their conspiracy. *Id.*, PageID # 9-10. Fourth, Defendants intentionally inflicted emotional distress on Delroy. *Id.*, PageID # 10-11. The Complaint seeks more than $75,000 per claim in damages. *Id.*, PageID # 7-11.

### C. Subsequent Filings.

The remainder of this Order uses the term "Defendants" to refer only to those Defendants whose motions to dismiss are before this court in the present Order: Robert Kim, Edward Smith, the Hawaii Family Court, and Judge Auna.

Defendants have moved to dismiss the Complaint under Rule 12(b)(1) or, in the alternative, Rule 12(b)(6) of the Federal Rules of Civil Procedure.

For his part, Delroy has filed a "Motion for a Trial Date," which requests that a trial date be set and also argues that Defendants' motions are without merit. *See* ECF 30, PageID

---

dismissed as "vague." ECF 20, PageID # 96. When a pro se complaint labels various individuals and entities "Defendants," and then asserts claims for relief against "the Defendants," it is not a stretch to read it as proceeding against all of the individuals and entities labeled "Defendants."

# 133.  Delroy attached as an exhibit a Hawaii Family Court document indicating that Judge Auna had recused himself from Delroy's Family Court proceedings on July 13, 2017.  ECF 30-2, PageID # 143.

**III.      STANDARD UNDER RULES 12(b)(1) AND 12(b)(6).**

**A.   Rule 12(b)(1).**

Rule 12(b)(1) authorizes a court to dismiss claims over which it lacks subject matter jurisdiction.  An attack on subject matter jurisdiction "may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.*  A factual attack, on the other hand, "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

Defendants bring facial attacks.  When the moving party makes a facial challenge, the court's inquiry is "confin[ed] . . . to allegations in the complaint." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 (9th Cir. 2003). Those allegations are taken by the court as true.  *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 (9th Cir. 2014).

**B.   Rule 12(b)(6).**

Defendants alternatively move under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Dismissal under Rule

8

12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984)).

To survive a Rule 12(b)(6) motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). The court takes all allegations of material fact as true and construes them in the light most favorable to the nonmoving party, then evaluates whether the complaint "state[s] a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Hence, conclusory

allegations of law, unwarranted deductions of fact, and
unreasonable inferences are insufficient to defeat a motion to
dismiss. *Sprewell*, 266 F.3d at 988; *Syntex Corp. Sec. Litig.*,
95 F.3d at 926.

On a Rule 12(b)(6) motion, the court's review is
generally limited to the contents of the complaint. *Sprewell*,
266 F.3d at 988; *Campanelli v. Bockrath*, 100 F.3d 1476, 1479
(9th Cir. 1996). If matters outside the pleadings are
considered, the Rule 12(b)(6) motion is treated as one for
summary judgment. *See Keams v. Tempe Tech. Inst., Inc.*, 110
F.3d 44, 46 (9th Cir. 1997); *Anderson v. Angelone*, 86 F.3d 932,
934 (9th Cir. 1996). The court may "consider certain materials
--documents attached to the complaint, documents incorporated by
reference in the complaint, or matters of judicial notice--
without converting the motion to dismiss into a motion for
summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908
(9th Cir. 2003).

This court addresses jurisdictional challenges first.
It reaches Rule 12(b)(6) matters only when it determines that it
has jurisdiction.

**IV.      ANALYSIS.**

**A.    The Court Has Subject Matter Jurisdiction.**

"Federal courts are courts of limited jurisdiction,"
and "[i]t is to be presumed that a cause lies outside this

limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The party invoking federal jurisdiction has the burden of proving the existence of subject matter jurisdiction. *Id.; Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). If a court lacks subject matter jurisdiction, it must dismiss the complaint, sua sponte if necessary. *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)).

Delroy claims that this court has jurisdiction because his Complaint presents a federal question. *See* ECF 1-1, PageID # 13. Delroy alleges that Defendants violated his rights under the Constitution. Consequently, the court construes Delroy as proceeding under 42 U.S.C. § 1983, which states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id.* Delroy's failure to expressly mention § 1983 is not a fatal flaw in a pro se complaint. *See Cadwalder v. United States*, 45 F.3d 297, 300 (9th Cir. 1995) (explaining that

federal courts should construe pro se pleadings "liberally");
*Bretz v. Kelman*, 773 F.2d 1026, 1027 (9th Cir. 1958) (reading a
cause of action into a pro se petitioner's factual pleadings).

This court has subject matter jurisdiction based on a
federal question. *See* 28 U.S.C. § 1331. This court also has the
discretion to exercise supplemental jurisdiction over the state-
law claims. *See* 28 U.S.C. § 1367.

> **B.** ***Rooker-Feldman* Does Not Divest the Court of Jurisdiction.**

The Hawaii Family Court seeks dismissal based on the
*Rooker-Feldmam* doctrine. *See* ECF 11, PageID # 5-7. Although
the other movants do not rely on *Rooker-Feldman*, this court
addresses the matter as to all four movants because *Rooker-*
*Feldman* concerns the foundational issue of this court's
jurisdiction. *See Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855,
859 (9th Cir. 2008) (explaining that *Rooker-Feldman*, if
applicable, revokes "subject matter jurisdiction") (quoting
*Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004)).
As it turns out, at this time, the *Rooker-Feldman* doctrine does
not apply to any Defendant in this case at all.

"Under *Rooker-Feldman*, lower federal courts are
without subject matter jurisdiction to review state court
decisions, and state court litigants may therefore only obtain
federal review by filing a petition for a writ of certiorari in

12

the Supreme Court of the United States." *Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 606 (9th Cir. 2005); *see also* 28 U.S.C. § 1257 (indicating that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari"). The Supreme Court has applied this doctrine to divest subject matter jurisdiction "only twice," having decided to "confine[]" the doctrine to "cases of the kind from which the doctrine acquired its name," i.e., *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). *Skinner v. Switzer*, 562 U.S. 521, 532 (2011) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). In paradigmatic *Rooker-Feldman* cases, "state-court losers complain[] of injuries caused by state-court judgments rendered before the district court proceedings commenced" and ask "district courts to review and reject those judgments." *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007) (quoting *Exxon*, 544 U.S. 280, 284 (2005)).

Because *Rooker-Feldman* rests on the idea that lower federal courts lack appellate jurisdiction over state courts, the Ninth circuit has explained that "federal district courts lack jurisdiction [under the doctrine only when they are reviewing] *final* state court judgments." *Henrichs*, 474 F.3d at

13

613 (emphasis added); *see also Mothershed*, 410 F.3d at 604 n.1 ("A state [court's] . . . ruling will therefore trigger the *Rooker–Feldman* doctrine's applicability [only] where such ruling constitutes the final determination of an issue."). "Proceedings end for *Rooker–Feldman* purposes when the state courts finally resolve the issue that the federal court plaintiff seeks to relitigate in a federal forum . . . ." *Mothershed*, 410 F.3d at 604 n.1.

Delroy does not seek to set aside a final state court determination. None of the orders discussed in the Complaint-- the TRO order, the grants of nonspecific "motions," the order directing Delroy to attend domestic violence classes--is "final." In Hawaii, a "final order" is "an order ending the proceedings, leaving nothing further to be accomplished. Consequently, an order is not final if the rights of a party involved remain undetermined or if the matter is retained for further action." *Familian Northwest, Inc. v. Central Pacific Boiler & Piping, Ltd.,* 68 Haw. 368, 370, 714 P.2d 936, 937 (1986) (quoting *Gealon v. Keala,* 60 Haw. 513, 520, 591 P.2d 621, 626 (1979)). None of Judge Auna's orders "end[ed] the proceedings." *Id.* This includes any TRO ruling. *See Maui Radiology Assocs., LLP v. Kawano*, No. SCPW-12-0000633, 2012 WL 4478583, at *5 n.1 (Haw. Sept. 27, 2012) ("An order denying a TRO is n[ot] an appealable final order."); *Kie v. McMahel*, 91

Haw. 438, 442, 984 P.2d 1264, 1268 (Ct. App. 1999) (explaining that Hawaii court defendants can "move[] [an issuing] court at any point to vacate or modify [a] TRO").

Delroy's Complaint, filed on June 28, 2017, refers to ongoing proceedings in the Hawaii Family Court. *See* ECF 1, PageID # 3. Nothing in the record indicates that there is a final order to which the *Rooker-Feldman* doctrine might apply. Moreover, a review of the Hawaii Family Court dockets reveals that judgment has yet to be entered in any of them. On none of the four dockets described in Delroy's Complaint had the Family Court entered judgment by the date that the Complaint was filed (June 28, 2017), or as of the date of this Order (October 18, 2017). *See* Hawaii State Judiciary's Public Access to Court Information, http://hoohiki.courts.hawaii.gov/#/search_listing?lastName=Pengelly&itemsPerPage=50&currentPageNumber=1&firstName=Delroy (last visited October 18, 2017) (listing the four dockets). The court notes that it "may take [judicial] notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001) ("[A] court may take judicial notice of matters of public record." (internal quotation marks and citation omitted)). The *Rooker-Feldman*

doctrine is therefore not applicable here.  *See Yellen v. Hara*,
No. CV 15-00300 JMS-KSC, 2015 WL 8664200, at *7 (D. Haw. Dec.
10, 2015) (declining to apply *Rooker-Feldman* when "there is no
state court judgment, and . . . [the state court] proceeding is
still ongoing").

The court turns to the party-specific arguments for
dismissal.

### C.    The Court Dismisses All Claims Against the Hawaii Family Court.

The Hawaii Family Court did not raise sovereign
immunity in moving to dismiss.  *See* ECF 11.  The court
nonetheless raises the issue sua sponte because Eleventh
Amendment immunity is a component of its subject matter
jurisdiction.  *See Edelman v. Jordan*, 415 U.S. 651, 678 (1974)
("[T]he Eleventh Amendment defense sufficiently partakes of the
nature of a jurisdictional bar so that it need not be raised [by
the state entity] in the trial court."); *Salerno v. Arizona*, 507
F. App'x 654, 654 (9th Cir. 2013) ("Eleventh Amendment sovereign
immunity limits the jurisdiction of the federal courts and can
be raised . . . by the court sua sponte.") (quoting *In re
Jackson*, 184 F.3d 1046, 1048 (9th Cir. 1999)).  *But see Hill v.
Blind Indus. & Servs. of Md.*, 179 F.3d 754, 760, *as amended*, 201
F.3d 1186 (9th Cir. 1999).

The court lacks subject matter jurisdiction over all claims against the Hawaii Family Court, an entity entitled to Eleventh Amendment immunity. "[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "This jurisdictional bar applies regardless of the nature of the relief sought." *Id.; see also Durning v. Citibank*, 950 F.2d 1419, 1422–23 (9th Cir. 1991) (noting that the Eleventh Amendment bars "federal courts from deciding virtually any case in which a state or the 'arm of a state' is a defendant"). Further, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997).

The Hawaii Family Court is an arm of the state of Hawaii and has not waived its immunity. Accordingly, all damages claims against it must be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### D.   The Court Dismisses All Claims Against Judge Auna.

Delroy does not indicate whether he is complaining about actions taken by Judge Auna in his individual or his official capacity.  This court analyzes both possibilities.

### 1.   Official Capacity.

Any claim against Judge Auna in his official capacity is barred by the Eleventh Amendment.  In *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989), the Supreme Court clarified that "a suit against a state official in his or her official capacity" is treated as "a suit against the State itself."  *Id.* at 71; *see also Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007).  The Court further noted that "neither a State *nor its officials acting in their official capacities* are 'persons' under § 1983."  *Id.* (emphasis added).  Although there is an exception to Eleventh Amendment immunity for official capacity suits that seek prospective injunctive relief, *see Quern v. Jordan*, 440 U.S. 332, 337 (1979), the Complaint requests only damages.  Accordingly, for the same reasons that the damages claims against the Hawaii Family Court are barred, the claims against Judge Auna in his official capacity are dismissed.

### 2.   Individual Capacity.

The Eleventh Amendment does not bar claims against Judge Auna in his individual capacity.  *See Alden v. Maine*, 527

U.S. 706, 757 (1999). However, such claims run afoul of the concept of absolute judicial immunity. Absolute judicial immunity is not an issue going to subject matter jurisdiction but rather is examined under Rule 12(b)(6). *See Meek v. Cty. of Riverside*, 183 F.3d 962, 965 (9th Cir. 1999). The Hawaii Family Court raised this issue on behalf of Judge Auna. *See* ECF 11, PageID # 43, 50-54.

"It is well settled that judges [sued in their individual capacity] are generally immune from civil liability under section 1983." *Meek*, 183 F.3d at 965 (citing *Mireles v. Waco,* 502 U.S. 9, 9–10 (1991)). "The rationale for granting judges immunity . . . is that judges should be free to make controversial decisions and act upon their convictions without fear of personal liability." *Id.* at 965.

Under the doctrine of absolute judicial immunity, judges are "immune from civil rights suits for judicial acts not taken in the absence of all jurisdiction." *O'Connor v. Nevada*, 686 F.2d 749, 750 (9th Cir. 1982) (per curiam) (citing *Stump v. Sparkman*, 435 U.S. 349, 357 (1978)). There are only two situations in which a judge is not absolutely immune. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.*

(quoting *Mireles*, 502 U.S. at 11-12). Otherwise, "[a] judge is not deprived of immunity because he takes actions which are in error, are done maliciously, or in excess of his authority." *Meek*, 183 F.3d at 965. "[T]he burden is on the official claiming immunity to demonstrate his entitlement." *Dennis v. Sparks*, 444 U.S. 24, 29 (1980).

The Complaint's allegations, taken as true, indicate that Judge Auna acted in his judicial capacity. To determine whether conduct is judicial in nature, courts examine whether "(1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity." *Meek*, 183 F.3d at 967 (quoting *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1302 (9th Cir. 1989)).

Delroy alleges that Judge Auna ruled on motions submitted to him during pending divorce, annulment, and TRO proceedings; ordered Delroy's income garnished in ruling on one motion; required Delroy to attend domestic violence counseling after finding that Delroy had violated the TRO and abused a family member; and made certain disparaging comments from the bench. All the relevant *Meek* factors weigh in favor of finding that Judge Auna acted in his judicial capacity. It is unclear

whether the second factor, which looks at whether conduct occurred in chambers, is applicable here. Even if none of the conduct occurred in chambers, that would not weigh against viewing Judge Auna's conduct as nonjudicial. That is, the law of judicial immunity does not operate to insulate only chambers conduct, while leaving a judge subject to suit under § 1983 for all courtroom conduct. *Cf. Meek*, 183 F.3d at 967 (finding that the second factor weighed against absolute immunity only when it did not appear that the challenged conduct "took place in a judge's chambers, *[and] it did not occur while the court was in session*" (emphasis added) (citation omitted)). Judge Auna took the alleged actions in his judicial capacity.

Nor did Judge Auna act outside his jurisdiction, such that absolute immunity is inapplicable. Judges are immune with respect to their judicial acts as long as their acts are not taken in the "clear absence of all jurisdiction over the subject matter." *Stump v. Sparkman*, 435 U.S. 349, 356 n.6 (1978). The "clear absence of all jurisdiction" is distinguishable from a mere "excess of jurisdiction":

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune . . . . [O]n the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

21

*Id.* at 356 n.7.

Judge Auna, a Hawaii Family Court judge, had jurisdiction over divorce, annulment, and TRO proceedings. *See* HAW. REV. STAT. ANN. §§ 580-1, 586-4 (West 2017). His judicial actions were not taken in "the clear absence of all jurisdiction," and he is entitled to absolute judicial immunity with respect to Delroy's damages claims.

### E. The Court Dismisses the § 1983 Claims Against Robert Kim and Edward Smith.

Both remaining Defendants--Robert Kim and Edward Smith --argue that the court lacks jurisdiction to hear the claims against them, or, in the alternative, that the Complaint fails to state a claim on which relief can be granted. *See* ECF 7, Page ID # 27; ECF 20, PageID # 96. Kim and Smith were involved in state-court matters as attorneys.

Smith argues that the court lacks jurisdiction because the Complaint did not establish that he acted "under color of state law." *See* ECF 20, PageID # 96. The failure to meet the "under color of state law" requirement in § 1983 does not speak to subject matter jurisdiction. As Defendant Kim notes, that issue appears instead to go to whether, under Rule 12(b)(6), Delroy states a claim. *See, e.g.*, *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 815-16 (9th Cir. 2010); *Johnson v. Knowles*, 113 F.3d 1114, 1116 (9th. Cir 1997); ECF

22

7-1, PageID # 27, 32. *But see Campbell v. Stein*, 314 F. App'x 976, 977 (9th Cir. 2009) (affirming a Rule 12(b)(1) dismissal for failure to allege action under color of state law on the grounds that the court "lacks subject matter jurisdiction"). The Supreme Court may have contributed to the confusion when, in discussing the procedural posture of a case, it remarked that "under color of state law" is "a *jurisdictional requisite* for a § 1983 action," and then proceeded to hold that "*[t]o state a claim* under § 1983, a plaintiff must [allege action] . . . under color of state law." *West v. Atkins*, 487 U.S. 42, 46, 48 (1988) (emphases added). The court follows the weight of authority in the Ninth Circuit and analyzes the issue as a Rule 12(b)(6) matter.

Section 1983 "provides remedies for deprivations of rights under the Constitution . . . when the deprivation takes place under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." *Caviness*, 590 F.3d at 812 (quoting *Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d 503, 505 (9th Cir. 1989)). Thus, to state a § 1983 claim, "[p]laintiffs must plead two essential elements: 1) that the Defendants acted under color of state law, and 2) that the Defendants caused them to be deprived of a right secured by the Constitution and the laws of the United States."

*Johnson*, 113 F.3d at 1117; *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

The first element, requiring action under color of state law, tracks the state action question posed in Fourteenth Amendment cases, which is whether an alleged infringement of federal rights is fairly attributable to the government. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) (addressing the Religious Freedom Restoration Act's "under color of state law" requirement, which the court held mirrors that in § 1983). "The state-action element in § 1983 'excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'" *Caviness*, 590 F.3d at 812 (quoting *Sullivan*, 526 U.S. at 50). "Careful adherence to the 'state action' requirement . . . preserves an area of individual freedom by limiting the reach of federal law and federal judicial power." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 306 (2001) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982)).

When a § 1983 suit seeks to recover from private parties, we "start with the presumption that private conduct does not constitute governmental action." *Sutton*, 192 F.3d at 835. To survive a motion to dismiss, the allegations in the Complaint must "raise a reasonable inference that [a defendant] was a state actor and thus acted under color of state law in

taking the alleged actions." *Caviness*, 590 F.3d at 808. Courts
will use four different factors to determine whether the
presumption is rebutted and action under color of state law is
present: "(1) public function, (2) joint action, (3)
governmental compulsion or coercion, and (4) governmental
nexus." *Sutton*, 192 F.3d at 835-36. When examining these
factors, courts keep in mind that "there is no specific formula
for defining state action," and the result "must be determined
based on the circumstances of each case." *Sutton*, 192 F.3d at
836 (quoting *Howerton v. Gabica*, 708 F.2d 380, 383 (9th Cir.
1983), and *Bass v. Parkwood Hosp.*, 180 F.3d 234, 242 (5th Cir.
1999)).

The Complaint does not specifically allege that
attorneys Kim and Smith acted under color of state law, but it
does claim that the parties and the Hawaii Family Court
conspired. This implicates the second factor, joint action,
which holds that "a private party's joint participation in a
conspiracy with the state" is action under color of state law.
*Sutton*, 192 F.3d at 840; *see also Johnson*, 113 F.3d at 1119
(noting that joint action is implicated when plaintiffs
"allege[] [a] conspiracy between [private individuals] and a
government actor"). For this analysis, it does not matter that
Judge Auna is entitled to absolute judicial immunity. *See*
*Dennis v. Sparks*, 449 U.S. 24, 30 (1980) ("[J]udicial immunity

[does not] insulate[] from damages liability those private persons who corruptly conspire with the judge.").

In *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970), the Supreme Court allowed a § 1983 suit to proceed given allegations that a private restaurant had conspired with police to arrest a Caucasian teacher who was trying to eat lunch with her African-American students.  The Court reasoned that "if [Adickes] can prove that a Kress employee, in the course of employment, and a Hattiesburg policeman somehow reached an understanding to deny Miss Adickes service in the Kress store, or to cause her subsequent arrest," then "she will be entitled to relief [against the restaurant] under § 1983."  *Id.* at 152.

In the years since *Adickes*, pleading standards have tightened, and the law of the circuit is that conclusory cries of "Conspiracy!" are not enough; there must be enough factual detail in the Complaint to make the assertion plausible.  *See Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991).  It should also be noted that "some courts, including [the Ninth Circuit], have held that racial discrimination cases, such as *Adickes*, require less governmental action than other types of claims."  *Sutton*, 192 F.3d at 841 n.6.  Delroy alleges that the attorneys filed documents with the Hawaii Family Court, which, in turn, ordered Delroy to attend counseling sessions and to pay part of his income to Margarita and their child.  These

allegations do not support a claim that the private parties acted under color of state law by virtue of a conspiracy with the judge. *See Dennis v. Sparks*, 449 U.S. 24, 28 (1980) ("Of course, merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge."); *see also Gritchen v. Collier*, 254 F.3d 807, 814 (9th Cir. 2001) ("[When a] plaintiff is simply enabled by state law and decides to pursue the remedy afforded . . . [that] does [not] convert the plaintiff's purely private action into state action."); *Price*, 939 F.2d at 708 ("[S]eeking court approval [does not] constitute[] state action.").

When a judge's rulings are allegedly "the product of a corrupt conspiracy involving bribery," the bribery allegation may support treating "the private parties conspiring with the judge [as] acting under color of state law." *Dennis v. Sparks*, 444 U.S. 24, 28 (1980). Here, by contrast, there is no allegation of bribery or other insidious activity; the Complaint merely indicates that the attorneys filed motions and the court ruled on the motions.

Ultimately, "a defendant is entitled to more than the bald legal conclusion that there was action under color of state law." *Price*, 939 F.2d at 708. Delroy's factual allegations do not support such an assertion. *See Ibrahim v. Dep't of Homeland Security*, 538 F.3d 1250, 1257-58 (9th Cir. 2008); *Price v.*

*Hawaii*, 939 F.2d at 707-09; *see also Judd v. Obama*, No. CV 12-9319 DDP AN, 2013 WL 1873089, at *3 (C.D. Cal. May 3, 2013) (dismissing a pro se complaint on these grounds).

Action under color of state law is a requirement for a § 1983 claim, and Delroy's failure to allege facts establishing such action is fatal to his § 1983 claims against Kim and Smith.

### F. The Court Declines to Exercise Supplemental Jurisdiction over the Remaining State-Law Claims.

This court may exercise supplemental jurisdiction over Delroy's state-law claims if Delroy asserts a federal claim sufficiently substantial to confer federal jurisdiction, and there is "a common nucleus of operative fact between the state and federal claims." *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995) (citing *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 421 (9th Cir. 1991)); *see also* 28 U.S.C. § 1367. This court may decline to exercise supplemental jurisdiction over a state-law claim if: (1) the claim raises a novel or complex issue of state law; (2) the state-law claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367.

Supplemental jurisdiction is a doctrine of discretion, not of a plaintiff's right. *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172 (1997); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Maltzman v. Friedman*, 103 F.3d 139 (9th Cir. 1996) ("[T]he doctrine of supplemental jurisdiction is a flexible one, giving a district court the power to exercise supplemental jurisdiction over a claim and the discretion whether to exercise such jurisdiction."). When "the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Gibbs*, 383 U.S. at 726. Although the Supreme Court has noted that such a dismissal is not "a mandatory rule to be applied inflexibly in all cases," it has also recognized that, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Delroy's case is the "usual case." *Id.* This court therefore declines to exercise supplemental jurisdiction over the remaining state-law claims of fraud, conspiracy, and intentional infliction of emotional distress.

29

### G.    The Court Denies the Motion for a Trial Date.

The court denies as unnecessary Delroy's Motion for a Trial Date.  ECF 30.  The court will set a trial date at a Rule 16 Scheduling Conference with Delroy and any remaining parties. A Rule 16 Conference is currently set for November 13, 2017, at 9:30 a.m. *See* ECF 17.

### V.    CONCLUSION.

The court dismisses all claims against the Hawaii Family Court and Judge Auna without leave to amend, as no amendment could cure the Eleventh Amendment and absolute judicial immunity defects.  *See Weilburg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007) ("Dismissal of a pro se complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988)); *Gillespie*, 629 F.2d at 640 (similar).

The federal claims against Defendants Smith and Kim are dismissed with leave to amend.  If Delroy files an Amended Complaint with a plausible federal claim, he may assert state-law claims in the same document.  Delroy may file an Amended Complaint against Defendants Smith and Kim no later than December 29, 2017.  The period before this deadline will allow this court to rule on Gianotti's pending motion to dismiss before an Amended Complaint is due.  Failure to file an Amended

Complaint by that deadline will cause claims against Smith and Kim to be automatically dismissed. In the event of such automatic dismissal, Delroy may, at his option, seek to litigate any cognizable claims he may have in state court.

Any Amended Complaint must be complete in itself; it may not simply incorporate by reference the original Complaint or anything previously filed with this court or any other court. Also, pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, any Amended Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." With respect to each claim, Delroy should describe what each Defendant allegedly did in separate, numbered paragraphs, including sufficient facts and references to legal claims and statutory citations to put the Defendants on notice of why they, specifically, are being sued. Complaints are the road map to a plaintiff's claim. Accordingly, any proposed Amended Complaint should clearly and concisely articulate the claim being asserted and the basis or bases of this court's jurisdiction, including whether Delroy wishes to proceed under § 1983 or some other federal law.

If Delroy is proceeding under § 1983, his allegations should include factual information about why each Defendant sued under § 1983 is acting under color of state law. If he is not proceeding under § 1983, then, depending on what law he is

proceeding under, there may not be an "under color of state law" requirement, but he must still state some claim that is plausible against each Defendant.

The Motion for a Trial Date is denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 18, 2017.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

Delroy Pengelly v. State of Hawaii, Family Court of the Third Circuit, Civ. No. 17-00306 SOM-KJM; ORDER GRANTING THE HAWAII FAMILY COURT'S, EDWARD SMITH'S, AND ROBERT KIM'S MOTIONS TO DISMISS AND DENYING MOTION FOR A TRIAL DATE.